**EXHIBIT D**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO. 13-CV-80385-BRANNON
(as Consolidated with 13-80730-BRANNON)

SUN LIFE ASSURANCE COMPANY OF CANADA,

Plaintiff,

v.

IMPERIAL HOLDINGS, INC., IMPERIAL
PREMIUM FINANCE, LLC, IMPERIAL LIFE
FINANCING II, LLC, IMPERIAL LIFE
SETTLEMENTS, LLC, IMPERIAL PFC
FINANCING, LLC, IMPERIAL PFC FINANCING II,
LLC, OLIPP I, LLC, and PSC FINANCIAL, LLC,

Defendants.

**RESPONSE OF PLAINTIFF SUN LIFE ASSURANCE COMPANY
OF CANADA IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
SECOND AMENDED CIVIL ACTION COMPLAINT**

## I.      <u>INTRODUCTION</u>

Sun Life determined years ago that it would not knowingly issue life insurance policies intended for investors rather than for consumers who need the insurance for financial protection.  *See* D.E. 150 ¶ 5.  Among other reasons, policies owned by investors are less profitable than policies owned by consumers.  Investors fund policies at lower levels and often terminate policies on healthy individuals but keep policies in force for the insureds with higher anticipated mortality rates.  When the policies are priced for a consumer market, as with Sun Life's policies, this leads to unsustainable loss ratios and unprofitable business.  *Id.* ¶ 4.  In order to avoid the investor market, Sun Life modified its application forms to inquire about the source of the premium and whether the policy was intended for the investor market.  *Id.* ¶ 5.

Nonetheless, Imperial acquired a substantial portfolio of Sun Life policies by directing and inducing its agents to simply lie on the applications.  Predictably, this portfolio is hugely unprofitable to Sun Life.  Unlike consumers, who use their cash value as a savings account, Imperial minimally funds the policies, depriving Sun Life of anticipated revenue sources.  In addition, Imperial has selectively terminated approximately half of the policies in the portfolio, further depriving Sun Life of expected revenues that would support the claims that will result on the remaining policies.  Because these policies were designed and priced for consumers but are now managed by investors, Sun Life has suffered significant financial harm, and Sun Life seeks compensation for that harm.

To the extent that the procurement of any of the policies violated applicable anti-wagering statutes, they are void, and Sun Life has asserted a claim for declaratory relief to that effect (Count VII).  Fundamentally, however, this lawsuit does not concern insurable interest standards or the legitimacy of the secondary market.  Regardless of whether stranger originated life insurance is permissible, Sun Life is not obligated to participate in that market, and Imperial may not use sham transactions and rampant fraud to generate policies against Sun Life's wishes.  Sun Life has properly and fully pled each of its claims, and Imperial's motion to dismiss should be denied.

## II.     <u>PLEADING STANDARD</u>

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  F<small>ED</small>. R. C<small>IV</small>. P. 8(a)(2).  The purpose of this rule is to give the defendant "fair notice of what the . . . claim is and the grounds upon which it rests[.]"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  The complaint must assert enough facts to state a claim to relief that is

plausible on its face.  *Id.* at 570.  A claim is plausible if the plaintiff pleads factual content that allows a court to draw a reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  When ruling on a motion to dismiss, the court must view the complaint in the light most favorable to the plaintiff, assume the veracity of well-pled factual allegations, and give the plaintiff the benefit of all reasonable inferences that can be drawn from the factual allegations.  *Jackson v. Okaloosa County, Fla.*, 21 F.3d 1531, 1534 (11th Cir. 1994); *see also Speaker v. U.S. Dept. of Health & Human Servs. Ctrs. for Disease Control & Prevention*, 623 F.3d 1371, 1380 (11th Cir. 2010).

In certain instances, such as a claim for fraud or mistake, a plaintiff is required to "state with particularity the circumstances constituting fraud or mistake."  FED. R. CIV. P. 9(b).  This Court has also held that a plaintiff who seeks to hold a principal liable for the fraud of its agent must also plead agency with specificity.  *See* D.E. 142.  The purpose of requiring particularity is to "alert[] defendants to the precise misconduct with which they are charged and to protect defendants against spurious charges of immoral and fraudulent behavior."  *Ziemba v. Cascade Intern., Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001).  But Rule 9(b) "must not abrogate the concept of notice pleading."  *Id.* Indeed, the Eleventh Circuit has noted that Rule 9(b) is an extension of Rule 8 and the two must be read in conjunction.  *Brooks v. Blue Cross and Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1371 (11th Cir. 1997).  Nor does the application of Rule 9(b) destroy the principle that when the Court considers a motion to dismiss, the plaintiff is entitled to all reasonable inferences drawn from the facts pled in the complaint.  *See, e.g.*, *Cosmas v. Hassett*, 886 F.2d 8, 11 (2d Cir. 1989).

Throughout its motion papers, Imperial argues that Sun Life's allegations are insufficient – no matter how detailed those allegations actually are.  For example, Sun Life's complaint centers on lies by various insurance producers on life insurance applications regarding the intent to use premium financing.  Sun Life alleged, among other things, that Imperial determined whether a policy would be suitable to Imperial before any application was ever submitted to Sun Life; Imperial directed the producers to apply to particular insurers, for particular products, and in particular amounts; and the producers turned over their entire commission to Imperial less some fraction determined by Imperial.  Notwithstanding detailed allegations setting forth each specific transaction, Imperial glibly argues there is nothing suggesting "any desire, agreement, or manifestation of an assent between Imperial and the producers."  D.E. 153 at 8.  Imperial seems to forget that in its pleadings, Sun Life need not *prove* that the producers were acting as Imperial's agent.  Instead, Sun

Life need only plead particular facts from which the fact-finder might conclude that this was the case.  As set forth below, Sun Life has more than satisfied its pleading obligation.

## III.   ARGUMENT

### A.   Sun Life Has Properly Pled a Claim for Declaratory Relief (Count VII)

Imperial opens its brief by attacking the last of Sun Life's seven causes of action, arguing that Sun Life has not properly asserted a claim for declaratory relief.  First, Imperial asserts that Florida's insurable interest statute does not provide a private cause of action.  Even if true, that has no bearing on the validity Sun Life's claim for declaratory relief under the Federal Declaratory Judgment Act.  Second, Imperial argues that even if such a cause of action is proper, Sun Life has not pled sufficient facts "supporting an alleged lack of insurable interest."  This is incorrect, but the analysis is premature in any event because it is not clear that Florida law applies to the procurement of the over sixty Sun Life policies in Imperial's portfolio.  Furthermore, even if Sun Life's declaratory judgment claim were deficient, that would not warrant dismissing the *entire* complaint.

### 1.   Sun Life Has Standing to Challenge the Policies for Lack of Insurable Interest

Imperial's argument that life insurers may not challenge the validity of a life insurance policy based on lack of insurable interest is legally incorrect.  Imperial notes that Florida's insurance statute (FLA. STAT. § 627.404(1)) does not expressly provide that policies lacking an insurable interest at inception are void *ab initio* and does not provide insurers with a private right of action to void such policies.  Imperial therefore argues that Sun Life's claim for declaratory relief (Count VII) is prohibited.  *See* D.E. 153 at 2-4.  However, the right to challenge a policy for lack of insurable interest is well established under the common law, and Florida's insurable interest statute does not abrogate that right.

The Florida Court of Appeals has noted that "Florida law requires that an individual contracting for insurance on the life of another have an insurable interest" so as to "prevent so-called 'wagering' contracts."  *Lopez v. Life Ins. Co. of Am.*, 406 So.2d 1155, 1158 (Fla. App. 4th Dist. 1981).  Indeed, the Supreme Court of Florida has previously found that a wagering policy is void *ab initio* as against public policy.[1]  *See Knott v. State ex rel. Guaranty Income Life Ins. Co.*,

---

[1] It is premature to conduct a complete choice-of-law analysis in connection with a motion to dismiss.  *See Smith v. Carnival Corp.*, 584 F. Supp. 2d 1343, 1349 (S.D. Fla. 2008) ("Without the benefit of discovery or briefing on the issue by the Parties, it is premature to rule on the

136 Fla. 184, 189-90, 186 So. 788, 790 (Fla. 1939); *see also Atkinson v. Wal-Mart Stores, Inc.*, No. 8:08-CV-691-T-30TBM, 2009 WL 1458020 at *3 (M.D. Fla. May 26, 2009).  Nothing in FLA. STAT. § 627.404 abrogates this common law rule that a wagering policy is void *ab initio*. *See Kluger v. White*, 281 So.2d 1, 4 (Fla. 1973) (common law principles remain in effect in Florida unless a statute specifically states otherwise); *Thornber v. City of Fort Walton Beach*, 568 So.2d 914, 918 (Fla. 1990) (courts are instructed to presume that no change in common law principles is intended unless a statute clearly expresses an intent to do so or unless the statute and common law principle cannot be reconciled).

Further, the absence of an explicit statutory cause of action does not mean that an insurer is unable to seek declaratory relief.  Sun Life asserted its claim under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, which permits any interested party to bring a suit seeking a declaration of that party's rights and other legal relations.  Although Imperial advances the sweeping proposition that an insurer may not challenge the validity of a life insurance policy based on lack of insurable interest, it cannot cite to a single decision supporting such a conclusion.  Indeed, this argument flies in the face numerous decisions where courts in Florida and elsewhere have entertained insurable interest challenges.  Some courts have found in favor of the insurers while others have found in favor of the policy owners,[2] but no court has ever

---

controlling law of the case.") (citations omitted).  Sun Life therefore addresses the insurable interest questions under Florida law by way of example; however, a lack of insurable interest renders a life insurance policy void *ab initio* in the vast majority of jurisdictions that have addressed the issue.  *See, e.g.*, *Paul Revere Life Ins. Co. v. Fima*, 105 F.3d 490, 492 (9th Cir. 1997); *Lincoln Nat'l Life Ins. Co. v. Joseph Schlanger 2006 Ins. Trust*, 28 A.3d 436, 441 (Del. 2011); *Beard v. Am. Agency Life Ins. Co.*, 550 A.2d 677, 688 (Md. 1988); *see also Penn Mutual Life Ins. Co. v. Greatbanc Trust Co.*, 887 F. Supp. 2d 822, 828 (N.D. Ill. 2012); *Sun Life Assurance Co. of Can. V. Paulson*, No. 07-3877, 2008 WL 451054 at *1 (D. Minn. Feb. 15, 2008); *Hilliard v. Jacobs*, 874 N.E.2d 1060, 1063 (Ind. Ct. App. 2007); *Farmers Butter & Dairy Coop. v. Farm Bureau Mut. Ins. Co.*, 196 N.W.2d 533, 536 (Iowa 1972); *Lincoln Nat'l Life Ins. Co. v. Schwarz*, Civ. No. 09-3361, 2010 WL 3283550 at *8 (D.N.J. Aug. 18, 2010).

[2] *See, e.g.,Pruco Life Ins. Co. v. Brasner*, No. 10-80804-CIV-COHN/SELTZER, 2011 U.S. Dist. LEXIS 156297, at *32 (S.D. Fla. Nov. 14, 2011) (holding a policy to be an illegal wagering contract and thus void *ab initio* where the insured took out the policy with the intent to sell it to a third party with no insurable interest); *see also Penn Mutual Life Ins. Co. v. Greatbanc Trust Co.*, 887 F. Supp. 2d at 830; *Sun Life Assur. Co. of Canada v. Berck*, 770 F. Supp. 728 (D. Del. 2011); *PHL Variable Insurance Company v. Bank of Utah, as Securities Intermediary*, No. 12-1256, 2013 WL 6190345 (D. Minn. Nov. 27, 2013) (declaring as void a policy procured pursuant to a premium financing scheme designed to circumvent law on insurable interest).

suggested that it lacks jurisdiction to resolve such a challenge.  This Court should reject Imperial's request for an unprecedented rule that would deny insurers access to the courts even in the face of criminal fraud.

### 2. Sun Life Has Pled Facts Sufficient to Establish that the Policies in Imperial's Portfolio May Be Void *Ab Initio*

Imperial alternatively claims that Count VII should be dismissed because Sun Life has not alleged facts sufficient to establish that the policies lacked an insurable interest at inception. Imperial principally argues that the policies were supported by an insurable interest because the named beneficiary of each policy was an irrevocable trust, and the named beneficiaries of each trust were close family members of the insured.  In other words, Imperial argues that these policies cannot be void *ab initio* because the transactions complied in form with Florida's insurable interest statute.  Imperial is incorrect.

Imperial knew it could not openly attempt to procure policies on the lives of total strangers.  Had it done so, Sun Life and other insurers would immediately know of Imperial's involvement and would decline to issue a policy.  Therefore, Imperial's transaction structure called for the creation of a trust that would give the appearance of legitimacy while concealing Imperial's involvement.  Imperial would provide the funding for the policy and acquire ownership of it, but the insurer would have no idea Imperial was behind the transaction.

Sun Life has alleged facts to suggest that each of the trusts was nothing but a sham. Under Florida law, "[a] trust may be created only to the extent the purposes of the trust are lawful, not contrary to public policy, and possible to achieve."  FLA. STAT. § 736.0404.  Sun Life has pled specific facts giving rise to the inference that these "trusts" were established specifically to circumvent the legal and public policy prohibitions against wagering on human life.  *See* D.E. 150 ¶¶ 48, 49, 66, 77, 89, 106, 119, 132, 145, 156, 170, 186, 197, 210, 221, 232, 245, 256, 271, 282, 295, 310, 324, 337, 346.  Imperial's argument requires a presumption that the trusts were lawfully issued and valid – a presumption to which Imperial is not entitled.

Imperial's arguments not only contradict the legal standard governing motions to dismiss, but they also contradict the substantive law governing life insurance contracts.  Indeed, long ago, the Supreme Court of the United States stated: "[C]ases in which a person having an interest lends himself to one without any, as a cloak to what is, in its inception, a wager, have no similarity to those where an honest contract is sold in good faith."  *Grigsby v. Russell*, 222 U.S. 149, 156 (1911).  Moreover, courts interpreting Florida law have adopted this principle: "[I]f the

insurance policy at issue 'was procured with the intention that it will be assigned or otherwise transferred to a person or entity with no insurable interest in the life of the insured,' . . . it is void *ab initio*." *Sciaretta v. Lincoln Nat'l Life Ins. Co.*, 899 F. Supp. 2d 1318, 1324 (S.D. Fla. 2012). In other words, there is a requirement under Florida law that a life insurance policy be procured in good faith. *Id*. at 1324-25.  Bad faith in the procurement of a life insurance policy could be evidenced by a pre-existing agreement or understanding that the policy is to be assigned to one having no insurable interest, the payment of some or all of the premiums by someone other than the insured, and in particular, by the assignee, or the lack of a risk of actual future loss.  *See Pruco Life Ins. Co. v. Brasner*, No. 10-80804-CIV-COHN/SELTZER, 2011 U.S. Dist. LEXIS 156297 at *24-25 (S.D. Fla. Nov. 14, 2011).[3]

Sun Life has set forth more than enough factual detail to establish an actual conflict for purposes of a declaratory judgment claim.

### 3.     Incontestable Clause Is Not a General Grant of Immunity for Fraud

Imperial focuses on Count VII because Imperial erroneously contends that the policies' incontestable clauses preclude Sun Life's remaining claims.  *See* D.E. 153 at 4, 6.  In making this argument, Imperial misapprehends the nature of this lawsuit and erroneously relies on *American United Life Insurance Company v. Martinez*, 480 F.3d 1043 (11th Cir. 2007).

An incontestable clause is nothing more than a contractual waiver of the right to contest the validity of a life insurance policy after a certain amount of time.  It is not a general waiver of all common law and statutory rights and remedies.  Nor is it a general grant of immunity for those who commit fraud.  Moreover, Sun Life is not seeking to contest[4] the policies, but to

---

[3] Imperial argues that because Count VII is based on fraud, "the facts supporting an alleged lack of insurable interest must be stated with particularity for *each* Policy."  D.E. 153 at 4 (emphasis added).  Imperial is mistaken.  Whether the policy is void depends on the true purpose of the policy.  If a policy is intended for financial protection, it is likely valid.  If it is intended as a wagering contract, it is likely void.  While Imperial and its agents lied in the application process about the true purpose of the policy, the lie itself does not render the policy void.  Sun Life's declaratory judgment claim is not premised on fraud, and Rule 9(b) does not apply to Count VII. *See, e.g.*, *Brasner*, No. 10-80804-CIV-COHN/SELTZER, 2011 U.S. Dist. LEXIS 156297 at *44 n. 6 (S.D. Fla. Nov. 14, 2011) (rejecting argument that "insurable interest" claim barred by incontestability clause because it was "based on misrepresentation and fraud").

[4] If the policies are void *ab initio* as wagering contracts, this is a function of public policy under the applicable law, not a contest by an insurer.  In that event, the policy, including the contestable clause, is deemed a nullity by operation of law.  *See Brasner*, Case No. 10-80804-

recover money damages under the federal RICO statute suffered when Imperial fraudulently procured a portfolio of policies that will generate profit for Imperial and substantial losses for Sun Life.

In its complaint, Sun Life set forth the nature of the harm it has suffered. Policies owned by consumers perform differently than policies owned by investors. For example, consumers use the cash value as an investment vehicle, paying additional premium in order to earn tax-free interest. This generates separate revenue sources for the insurer. Investors have no estate planning objective and instead minimally fund policies they control. *See* D.E. 150 ¶ 10. In this case, Imperial lied to obtain the benefit of a premium pricing structure that was designed for consumers. In addition, adverse selection within the portfolio – *i.e.*, terminating the policies on healthy insureds while continuing policies on the terminally or chronically ill – leads to grossly unprofitable loss ratios. *Id.* ¶ 365. The remedy Sun Life seeks is not a voiding of the policies. Rather, Sun Life seeks to recover money damages because the lies of Imperial and its agents resulted in the procurement of an unprofitable portfolio. Sun Life's harm is not necessarily the future payment of a death benefit, but the past and current loss of expected revenue on the entire portfolio. Whether the policies are "incontestable" has nothing to do with Sun Life's claims. Nor does an incontestable clause allow Imperial to engage in fraudulent conduct with impunity.

The absurdity of Imperial's argument is particularly apparent when viewed in light of the criminal investigation that has already resulted in Imperial's admission of wrong-doing, the imposition of an $8 million fine for engaging in insurance fraud, and Imperial's forced exit from the premium financing business. *See* D.E. 150 ¶¶ 353-54. The federal RICO statute provides an explicit civil remedy for victims of criminal racketeering activity. Sun Life should not be denied access to this remedy simply because Imperial trafficked in fraudulently procured life insurance policies rather than some other commodity.

Finally, the *Martinez* case bears little resemblance to this matter. That case arose out of a receivership action involving Mutual Benefits Corporation, a failed viatical settlement provider. The Securities and Exchange Commission sued various principals of Mutual Benefits, alleging that they defrauded investors who purchased fractional interests in life insurance policies

CIV-COHN/SELTZER, 2011 U.S. Dist. LEXIS 1598 at *21 (S.D. Fla. Jan. 7, 2011); *John Hancock Life Ins. Co. v. Rubenstein*, Case No. 09-21741-CIV-UNGARO, D.E. 28 at 5 n. 4 (S.D. Fla. June 24, 2009).

insuring AIDS patients.  Shortly after Mutual Benefits was placed into receivership, several insurers filed an ancillary proceeding against the receiver, asserting that the policies were procured by fraud and should be deemed void *ab initio*.  The *Martinez* case involved four discrete policies, none of which was governed by Florida law.  Unlike *Martinez*, Sun Life is not attempting to contest the policies.

**B.**      **Sun Life Has Adequately Pled a Claim for Fraud (Count III)**

In its motion to dismiss Sun Life's fraud claim, Imperial continues to argue that Sun Life has not alleged sufficient facts to establish an agency relationship between Imperial and the insurance producers who made fraudulent statements on the applications for life insurance.  In making these arguments, Imperial seeks to hold Sun Life to the ultimate standard of proof, rather than the standard for pleading a complaint.  For example, although Imperial designated the producers as "*our* top agents," Imperial casually dismisses this statement.  D.E. 150 ¶ 35.  Even if Imperial believes a fact-finder could conceivably find that "our agents" is not an admission that the producers were acting at Imperial's direction and for Imperial's benefit, Imperial is not entitled to such an inference in its motion to dismiss.  Similarly, Sun Life set forth specific details showing the manner in which Imperial directed the agents in all aspects of the policy procurement process.  Under any reasonable and fair application of Rule 9(b), Sun Life has set forth sufficient facts to allege that the producers were Imperial's agents.

An actual agency relationship exists where there is an (1) acknowledgement by the principal that the agent will act for him, (2) the agent's acceptance of the undertaking, and (3) control by the principal over the agent's actions.  *See PYCSA Panama*, *S.A. v. Tensar Earth Tech., Inc.*, 625 F. Supp. 2d 1198, 1252 (S.D. Fla. 2008).  A party to a lawsuit cannot escape liability for fraud by directing others to commit fraudulent acts.  *See United States v. Funt*, 896 F.2d 1288, 1293-94 (11th Cir. 1990).  When a defendant establishes, conducts, supervises and benefits from a fraudulent scheme, it is liable for the fraud, both directly and on a vicarious basis for the acts of its agents.  *See United States v. Sawyer*, 799 F.2d 1494, 1502 (11th Cir. 1986).

In addition to Imperial's S-1 SEC statement, Sun Life's complaint also incorporates Imperial's Non-Prosecution Agreement, in which it admitted, among other things, that "Imperial internal life agents facilitated and/or made misrepresentations on applications that the prospective insured was not seeking premium financing when the insurance carrier was likely to deny the policy on the basis of premium financing" and that "Imperial facilitated and/or made

misrepresentations regarding premium financing on life insurance applications for elderly individuals and failed to take appropriate precautions to prevent other misrepresentations that may have been made on said life insurance applications by employees, prospective insureds, and external agents and brokers." D.E. 150 ¶ 352; D.E. 150, Exh. 1, Appendix A, ¶¶ 12, 15. Without any more, these admissions are sufficient to establish an *inference* of an agency relationship between Imperial and those who lied for Imperial's benefit in this case. However, Sun Life has pled much more.

### 1.      Imperial Acknowledged that the Producers Would Work for Its Benefit and That the Producers Accepted this Undertaking

Based on the allegations in the complaint, which demonstrated the same pattern across the various policies at issue in this case, it is not only "plausible on its face" that Imperial and the named producers agreed that these producers would act on Imperial's behalf, but there is a strong inference to be drawn that this was the case. *Twombly*, 550 U.S. at 570.

For instance, Sun Life alleged that one of Imperial's national sales managers wrote to a group of producers urging the producers to submit as many proposed deals as possible, and that many of the policies at issue in this case were applied for and issued immediately after this communication. *See* D.E. 150 ¶ 36. In other words, Imperial directed these producers to recruit prospective insureds for its scheme. Sun Life has also alleged that Imperial directed the producers to provide medical records, life expectancy reports, medical record disclosure authorizations, and life insurance policy illustrations to Imperial long before the submission of an application to an insurer. *See* D.E. 150 ¶¶ 8, 39, 57, 72, 82, 95, 111, 125, 137, 150, 162, 175, 191, 202, 215, 217, 226, 230, 239, 250, 261, 265, 276, 287, 301, 315, 329, 342. After reviewing the information, Imperial directed the producer to move forward with a formal application for life insurance, specifically selecting the insurer and the product based upon Imperial's preference rather than the insureds' needs. Further, Imperial directed the producer in selecting the face amount of the policy as well as the ownership structure of the policy. *See* D.E. 150 ¶¶ 8, 40, 59, 61, 72, 73, 83, 87, 98, 99, 102, 103, 104, 114, 127, 128, 139, 140, 141, 152, 165, 168, 177, 180, 192, 203, 206, 217, 227, 240, 252, 266, 269, 277, 278, 288, 289, 290, 305, 306, 318, 332, 343. Pursuant to this Court's order, Sun Life set forth specific factual details for each of these activities, specifying each instance in which Imperial directed the producers.

Sun Life also alleged that Imperial required the producer in each case to remit his or her commission – the money received from Sun Life as compensation for placing the policy in force

– *to Imperial*. *See* D.E. 150 ¶ 45. Imperial then compensated the producer for his or her involvement on behalf of Imperial by paying the producer some fraction of the commission that Imperial determined. *Id.* Sun Life alleged multiple instances of this compensation being dictated by Imperial and determined *prior* to the policy being placed in force. *Id.* ¶¶ 59, 62, 74, 84, 87, 100, 104, 115, 129, 142, 153, 166, 168, 181, 193, 207, 218, 228, 241, 253, 267, 269, 277, 279, 288, 292, 305, 307, 319, 334, 344. Again, Sun Life provided specific factual detail for each instance in which Imperial compensated the producers.

Imperial now argues that these facts are not sufficient to assert an agency claim because they do not establish conclusively that these producers acted on Imperial's behalf, arguing that these facts are "consistent with a finding that each producer acted for his own benefit." D.E. 153 at 8-9. Imperial seems to believe it is Sun Life's obligation to plead facts that will foreclose all of Imperial's possible defenses. But that is not the case. At this stage, Sun Life is entitled to all "reasonable inferences drawn from those [well-pled] facts[.]" *Jackson v. Okaloosa Cnty., Fla.*, 21 F.3d 1531, 1534 (11th Cir. 1994).

"An agent's authority to act on behalf of the principal may be inferred from acts, conduct, and other circumstances and an agency relationship may be found to exist even if both the principal and the agent deny the existence of the relationship." *Overseas Private Inv. Corp. v. Metropolitan Dade County*, 826 F.Supp. 1564, 1576 (S.D. Fla. 1993). "Where the evidence concerning the existence of an agency relationship is susceptible to more than one interpretation, the question whether such a relationship exists must be submitted to the jury." *Id.* Here, Sun Life has alleged more than enough facts to give rise to an inference that the producers were acting for Imperial's benefit and at Imperial's request. For example, it is inconceivable that a producer acting for his own benefit would be willing to forfeit the bulk of his compensation to facilitate a loan for his ostensible client, the insured. If the producer were acting on his own accord, he would insist that the insured procure a loan with his or her own funds, and the producer would retain the entirety of the commission that he earned on the sale. Remitting up to ninety percent of the commission to Imperial only makes sense for a producer who is subject to Imperial's control. As the moving party, Imperial is not entitled to any favorable inference at all, but the inference it seeks here – that the agents were acting solely for their own benefit – is utterly absurd.

**2.    Sun Life Has Sufficiently Pled Imperial's Control of the Agent's Activities**

Imperial also argues that there "is not a single fact alleged in the Second Amended Complaint that suggests that Imperial exercised day-to-day control over the producers."  D.E. 153 at 9.  In making this argument, Imperial overlooks pages of allegations establishing that the producers abdicated their responsibilities to their ostensible clients (the insureds) and instead deferred to Imperial with regard to all the significant decisions regarding the policies.

Any assessment of Imperial's control must begin with an understanding of an insurance producer's legitimate day-to-day duties.  Insurance producers provide a financial planning service to their clients.  The goal is to assess a client's need for financial products and ensure that the client obtains the right product to meet that need.  Insurance producers are obligated to learn about their client's financial circumstances and to understand the specific financial risks against which life insurance protects.  Armed with this knowledge, the insurance producer can then select the insurers and products that best meet the client's needs.  To serve as an insurance producer, particularly in the sale of high-dollar life insurance policies for wealthy senior citizens, an individual must be knowledgeable and carefully attuned to the needs of his clients.  *See* D.E. 150 ¶¶ 68, 79, 91, 108, 122, 134, 147, 158, 172, 188, 199, 212, 223, 234, 247, 258, 273, 284, 297, 312, 326, 339, 348.

In this case, however, all of the important decisions were dictated by Imperial to the insurance producers without any thought whatsoever as to the insureds' needs.  For example, Sun Life issued a policy on the life of June Fuhrman, who was recruited at a seminar held at Ruth's Chris Steakhouse.  *See* D.E. 150 ¶ 137.  Before assessing Ms. Furhman's actual financial needs, the producer submitted her medical information to Imperial to see whether Imperial was interested in a policy on her life.  *Id.*  On February 27, 2009, without knowing anything about Ms. Fuhrman or her financial circumstances, Imperial directed its own contract department to create a trust that would own a future policy on Ms. Furhman's life.  *Id.* ¶ 138.  On June 23, 2009, Imperial directed the producer to "move forward" with a $5 million policy with Sun Life, specifying the product – UL Protector LP6 STD.  *Id.* ¶ 139.  Two months later, Imperial changed its instruction and directed the producer to "move forward with Sun Life LP6 Preferred."  *Id.* The procurement of Ms. Furhman's policy was not an isolated example.  Sun Life detailed multiple instances where the insurance producers abandoned their legal and ethical obligations and simply followed the instructions of Imperial, manufacturing policies suitable for Imperial's

11

needs.  *See, e.g.* D.E. 150 ¶¶ 68, 79, 91, 108, 122, 134, 147, 158, 172, 188, 199, 212, 223, 234, 247, 258, 273, 284, 297, 312, 326, 339, 348.

Imperial attempts to argue it lacked control over the day to day activities because the producers were not "obligated to comply with any of Imperial's statements."  D.E. 153 at 9. This argument misses the mark.  Indeed, an employee is free to disregard the commands of his employer, but he cannot expect to continue receiving the benefits of his employment for very long.  The same is true here.  If the producers wished to receive compensation from the sale of a life insurance policy, they were obligated to follow Imperial's instructions.  The policy would only be issued if Imperial supplied the funding, and Imperial would not supply the funding if the producers supplied policies inconsistent with Imperial's directives.  Sun Life alleges that the producers were Imperial's *agents*, not its indentured servants.  The fact that the producers could have chosen not to participate in a particular transaction does not change the fact that, by following Imperial's instructions, the producers acted as Imperial's agents.

Imperial's argument that Sun Life has failed to allege facts showing that Imperial "expected or incentivized the producers" to follow Imperial's directives is equally unavailing. D.E. 153 at 9.  Without Imperial, these policies would not be issued, because the insureds had no need for them.  If an insured actually wanted a life insurance policy and actually wanted to finance the premiums, the insured could borrow money from a legitimate source.  No genuine loan transaction requires a third party to hand over tens or hundreds of thousands of dollars *to the lender* as a condition of the loan.  Nonetheless, the producers went along with Imperial's demands, including Imperial's requirement that the producers surrender up to ninety percent of their commission to Imperial, presumably in order to receive compensation from Imperial that they would not have otherwise received.  Imperial's suggestion that the complaint does not contain facts showing how Imperial incentivized the producers demonstrates that Imperial will say anything, no matter how demonstrably wrong, to avoid the merits of Sun Life's claims.

Imperial's argument that the complaint lacks allegations of control because Sun Life has not demonstrated Imperial's power to discipline the producers is silly.  There is no legal authority for the notion that the principal must be empowered "to discipline the agent for non-compliance."  D.E. 153 at 9.  The consequence of disregarding Imperial's instructions, of course, was Imperial's refusal to supply the funding for the policy, which meant the producer would receive no payment.  The producers knew this, and that is why they did what they were told.

There was only one occasion where the producer mistakenly went forward with the wrong policy. Although Imperial still agreed to fund the loan, it reduced the producer's compensation – thus, punishing the producer for his noncompliance. *See* D.E. 150 ¶¶ 181, 184.

Finally, Imperial's suggestion that it did not assert day to day control because the producers could search for other funding sources lacks merit. *See id.* Besides being an attempt to introduce facts that are not part of the complaint, this argument is legally baseless. When a producer abdicates his role as an insurance adviser to his client and willingly follows the directives of Imperial in order to receive compensation that he would not otherwise receive, he is Imperial's agent for purposes of that transaction. It is immaterial that the producer might act as an agent for some other entity in other transactions.

Imperial's dubious arguments are based on inferences it wishes to draw from Sun Life's complaint, but Imperial is not entitled to any such inferences. Sun Life's allegations are more than sufficient to state a fraud claim against Imperial premised on the actions of its agents.

C.     **Sun Life Has Sufficiently Pled a Claim for Aiding and Abetting Fraud**

Imperial's argument that Sun Life has failed to adequately plead a claim for aiding and abetting fraud rests on two grounds:  (1) that Sun Life did not adequately plead that Imperial had knowledge of the underlying wrongdoing; and (2) that Sun Life did not adequately plead that Imperial provided substantial assistance to advance the underlying fraud. *See* D.E. 153 at 9-11. Again, these arguments are far more than meritless – they show that Imperial is not honest with the Court.

Imperial argues that "Sun Life has not alleged sufficient facts to show that Imperial had *actual* knowledge of the producers' alleged fraud." D.E. 153 at 10. This is from a company that has already admitted to federal criminal authorities that producers under its control lied about premium financing on life insurance applications to generate policies that Imperial knew would not be issued otherwise. *See* D.E. 150 ¶¶ 351-52, Exh. 1. But there is more. Sun Life alleged that it advised the entire distribution community that it would not issue policies funded with non-recourse premium financing. Sun Life specifically alleged that "[s]ome insurance producers were direct employees of Imperial" and these employees "received communications directly from Sun Life setting forth Sun Life's opposition to STOLI and undisclosed premium financing." *Id.* ¶¶ 34, 43. These allegations, which must be taken as true, establish Imperial's knowledge. *See Gutter v. E.I. Dupont De Nemours*, 124 F. Supp. 2d 1291, 1309 (S.D. Fla. 2000)

("The law conclusively presumes that the agent has disclosed the knowledge or information to his or her principal, and charges the principal accordingly.").

Imperial goes on to assert that Sun Life "does not even allege that anyone at Imperial ever saw any of the completed applications prior to issuance of the Policies" and that this deficiency is "fatal to Sun Life's cause of action." D.E. 153 at 11. This is false. Sun Life alleged multiple instances in which Imperial received a copy of the application containing the fraudulent statements before the policy was placed in force but funded the policies anyway. *See* D.E. 150 ¶¶ 63, 75, 85, 101, 116, 130, 143, 154, 167, 182, 194, 208, 219, 229, 242, 254, 268, 280, 293, 308, 320, 335, 345. Regardless, Imperial does not have to "see" the applications before submission to know they are fraudulent. Imperial knew that it would finance a particular policy when it told the producer to submit the application. Imperial also knew that Sun Life asked specific questions about premium financing, and so the only way the policy would be issued is if the producer lied on the application. Imperial has already admitted this in the federal criminal investigation.

Moreover, Sun Life's allegations of a pattern establish Imperial's knowledge of the fraud prior to submission of the applications. Even if Imperial truly had no knowledge that an application had false statements, Imperial would become aware of the fraud as soon as it issued its loan and received a copy of the policy and appended application. If this happened only once, Imperial might plausibly claim disclaim knowledge of the fraud. But, the second time, Imperial was surely on notice that the producers had to commit fraud to obtain the policy. In this case, it happened *every single time*. Sun Life's allegations establish Imperial's knowledge of the pattern of fraud, and Imperial's frivolous argument to the contrary damages its credibility.

Finally, Imperial argues that Sun Life has not adequately alleged facts showing that Imperial provided substantial assistance to advance the fraudulent activity – once again simply ignoring the specific facts alleged in the complaint. These facts include those set forth above. *See* Section III.B.1 at 9-10. In addition, Sun Life has described, both generally and in detail for each policy at issue, how Imperial assisted the policy owners to keep the fraud hidden by concealing Imperial's involvement (both before and after the policies went into force) by, for example, funding the premium payments through the "Family Insurance Trust" (which had nothing to do with any of the insureds but was designed purely to conceal Imperial's involvement in the transactions) and preparing information requests to be submitted by the

14

policy owners for Imperial's benefit but without revealing Imperial's involvement. *See* D.E. 150 ¶¶ 48, 49, 65, 66, 76, 77, 88, 89, 105, 106, 117,118, 119, 131, 132, 144, 145, 155, 156, 169, 170, 185, 186, 196, 197, 209, 210, 220, 221, 231, 232, 244, 245, 255, 256, 270, 271, 281, 282, 294, 295, 309, 310, 321, 322, 324, 336, 337, 346. This is more than sufficient at this stage in the proceedings to establish the "substantial assistance" requirement for a claim for aiding and abetting fraud.

### D.   Sun Life Has Sufficiently Pled a Claim for Civil Conspiracy to Commit Fraud

Imperial also claims that the Second Amended Complaint contains mere conclusory allegations of conspiracy and that Sun Life has not made particularized allegations about the "who," "what," "when," "where," and "how" of the conspiracy to defraud Sun Life.[5] Again, Imperial ignores the procedural posture of this case, essentially arguing that Sun Life must prove, by direct evidence, that Imperial and its co-conspirators came to a specific agreement on a certain date laying out precisely the objects of the conspiracy and how they would be achieved.

This argument, of course, is ludicrous. Imperial has not cited any authority that supports its position that a complaint does not sufficiently allege a conspiracy between certain entities unless it "elaborate[s] on *who*, *when* or *how* those entities *formed* the agreement." D.E. 153 at 12. To the contrary, "[a]greements, of course, may be established by circumstantial evidence." *Koch v. Royal Wine Merchs., Ltd.*, 907 F. Supp. 2d 1332, 1346 (S.D. Fla. 2012). Alleging facts showing that "the defendant committed an act which furthered the purpose of the conspiracy is an example of the type of circumstantial evidence that can prove the existence of an agreement." *Id.* at 1347. The Supreme Court has recognized that a plaintiff is only required to state "enough factual matter (taken as true) to *suggest that an agreement was made*" to properly plead a conspiracy. *Twombley*, 550 U.S. at 556 (emphasis added). And, of course, at the motion to dismiss stage, Sun Life is entitled to the benefit of all reasonable inferences from the facts it has pled. *See Jackson*, 21 F.3d at 1534 (11th Cir. 1994).

Sun Life has alleged sufficient particularized facts that, along with the reasonable inferences arising from those facts, establish the existence of an agreement to commit an

---

[5] Imperial also argues that the conspiracy claim must fail if the underlying fraud claim fails. However, as discussed above in Section III.B, Sun Life has sufficiently pleaded a claim for fraud. Moreover, Imperial does not appear to challenge the sufficiency of Sun Life's pleadings as to any element other than the existence of an agreement.

unlawful act.  For instance, Sun Life has alleged an agreement between Imperial and the named producers to obtain life insurance policies through the use of fraudulent statements.  Again, these facts include those that are set forth above.  *See* Section III.B.1 at 9-10.  Sun Life has also, as discussed above, pled that Imperial knew of Sun Life's decision to not issue policies financed through programs such as Imperial's, and knew that the applications contained fraudulent statements even prior to the policies being placed in force.  Sun Life pled that Imperial required the named producers to pay over the commissions received from Sun Life to Imperial so that Imperial could fund the premiums on policies acquired, and that Imperial in turn compensated the producers for their efforts.  Finally, Sun Life pled that in the vast majority of cases, the producers followed Imperial's instructions to the letter – and when they didn't, Imperial punished them by withholding their compensation.  Thus, even if the only conspirators here were Imperial and the named producers, Sun Life would have adequately pled a conspiracy.

Of course, there were other conspirators as well – such as some of those individuals who served as trustees for the trusts that owned the policies at issue.  Sun Life has alleged that Imperial:  (1) provided form trust agreements that were used in establishing the trusts (D.E. 150 ¶ 46); (2) directed the trustees's actions with regard to the policies and the assets of the trust (*id.* at ¶¶ 47, 49, 66, 77, 89, 106, 119, 132, 145, 156, 170, 186, 197, 210, 221, 232, 245, 256, 271, 282, 295, 310, 324, 337, 346); and (3) funneled premium payments for the policies through the trustees and the Bank of Utah (*id.* at ¶¶ 48, 65, 76, 88, 105, 117, 131, 144, 155, 169, 185, 196, 209, 220, 231, 244, 255, 270, 281, 294, 309, 321, 336).  Each of these actions was designed to conceal Imperial's involvement with the policies, and each gives rise to a reasonable inference that there was an agreement between these trustees and Imperial to participate in a scheme to fraudulently procure life insurance for Imperial's benefit.

### E.      Sun Life Has Sufficiently Alleged a Claim for Tortious Interference

Imperial's sole argument for the dismissal of Sun Life's tortious interference claim is as follows:  because Sun Life failed to plead its fraud case with the required specificity, and because Sun Life's tortious interference claim is premised on the same fraudulent conduct as Sun Life's fraud claim, Sun Life's tortious interference claim has also not been pled with the required specificity.  However, as set forth above in Section III.B, Sun Life has properly pled all elements of its fraud claim, and thus Imperial's current argument is without merit.

Moreover, there is no heightened pleading standard for tortious interference.  The

16

producers violated their producer agreements by procuring policies intended for an investor market.  That they did so by employing fraudulent means is irrelevant.  Imperial knowingly and willingly encouraged and enabled these contractual breaches.  Therefore, Imperial is liable for tortious interference.  *See Pilkington v. United Airlines*, 112 F.3d 1532, 1540 (11th Cir. 1997) (setting forth elements of claim).

> **F.      Sun Life's Civil RICO Claims Are Sufficiently Alleged**

Imperial moves to dismiss Sun Life's civil RICO claims on two grounds:  first, that Sun Life did not properly plead Imperial's participation in a pattern of racketeering activity; and second, that Sun Life did not properly plead the existence of an enterprise.  Both of these arguments simply reframe Imperial's previous arguments concerning the fraud claim, and both are based on Imperial's willful blindness to the allegations in the complaint.

> **1.      Sun Life Has Properly Pled a Pattern of Racketeering Activity**

Imperial essentially concedes that Sun Life has properly pled the required acts of racketeering activity (mail fraud and wire fraud) by the named producers; however, it argues that the Second Amended Complaint does not contain factual allegations sufficient to allow these acts of racketeering activity to be imputed to Imperial.  This is the same argument that Imperial has advanced with regard to Sun Life's fraud claims.  For the same reasons set forth in Section III.B, *supra*, Sun Life's factual allegations are more than sufficient to establish an agency relationship between Imperial and these named producers.[6]

Imperial's second argument is that Sun Life has not made factual allegations that Imperial directed the affairs of the enterprise.  Of course, "RICO liability is not limited to those with primary responsibility for the enterprise's affairs[.]"  *Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993).  A party must only have "participated in the operation or management of the enterprise[.]"  *Id.* at 183.  Here, as set forth above, Sun Life has pled that Imperial directed the producers to recruit proposed insureds; that Imperial directed the producers in procuring life

---

[6] Sun Life has also asserted a claim under 18 U.S.C. § 1962(a).  For that claim, it is not necessary to allege that the defendant engaged in the racketeering activity.  Instead, it is necessary to allege that the defendant "used or invested" any "income derived, directly or indirectly, from a pattern of racketeering activity . . . ."  18 U.S.C. § 1962(a); *see also Lockheed Martin Corp. v. Boeing Co.*, 357 F. Supp. 2d 1350, 1370 (M.D. Fla. 2005) ("[I]t is the use or investment of racketeering income, not racketeering acts, which violates § 1962(a).").

insurance policies; that Imperial directed the other participants in the Life Wagering Enterprise with regard to how to structure the various trusts that were to serve as nominal owners of each prospective policy; and that Imperial required the producers to pay over the commissions received from Sun Life to Imperial in furtherance of the Life Wagering Enterprise.  Sun Life has also pled that, once the policies were issued, Imperial directed and controlled all of the assets and actions of the various trusts and trustees who owned the issued policies so as to ensure that Imperial's involvement remained hidden.  Not only did Imperial direct the other participants in these matters, but when the other participants failed to follow Imperial's precise instructions, Imperial penalized them.

These actions are sufficient to establish that Imperial participated in the operation or management of the Life Wagering Enterprise.  Additionally, Imperial specifically admitted in its Non-Prosecution Agreement that it facilitated and/or made misrepresentations regarding premium financing on life insurance applications – precisely the conduct that Sun Life has alleged underpinned the Life Wagering Enterprise.  *See* D.E. 150, Exh. 1, ¶¶ 12-15.

### 2.    Sun Life Has Properly Pled the Existence of an Enterprise

Imperial next claims that Sun Life's civil RICO claim fails because Sun Life has not properly pled the existence of an "enterprise."  This is premised on Imperial's claim that Sun Life has not properly pled an agreement between the various implicated individuals and entities to participate in the Life Wagering Enterprise.  But, as Imperial acknowledges, this agreement can be shown by proving either an explicit agreement to participate in the enterprise or by providing circumstantial evidence showing that each defendant must have known that the others were conspiring to participate in the same enterprise.  *See* D.E. 153 at 16-17.  The Second Amended Complaint contains factual allegations sufficient to satisfy either prong of this test.

That Imperial agreed with the producers to participate in the Life Wagering Enterprise is established by dozens of specific factual allegations, which, as discussed above, show that Imperial not only participated in, but directed a common scheme for fraudulently acquiring life insurance policies.  While one instance of a life insurance policy being procured in this manner alone would be circumstantial evidence of a pre-existing agreement among the enterprise members, dozens of separate and distinct occurrences of substantially the same transaction with different insurance producers, insureds, and trustees is overwhelming evidence that not only did Imperial know precisely what was happening, but that Imperial was the driving force that

controlled and managed the enterprise.  Imperial, again, conveniently ignores these allegations.

Moreover, Imperial admitted to the precise scheme alleged by Sun Life in the Non-Prosecution Agreement, acknowledging that:  (i) it utilized life insurance producers who made misrepresentations on life insurance applications concerning the source of funds for policies in order to procure policies that the insurer would not have issued if it had known of Imperial's involvement; (ii) it facilitated and/or made misrepresentations regarding premium financing on life insurance applications for elderly individuals; and (iii) it failed to appropriately tailor controls to prevent fraudulent practices in its premium finance business, including misrepresentations made to insurers by producers and insureds.  *See* D.E. 150, Exh. 1.  These admissions, coupled with Sun Life's allegations that Imperial was directing the scheme, are sufficient to show that Imperial knew what others were doing in furtherance of the enterprise.

### G.      Sun Life's RICO Conspiracy Claims Are Sufficiently Alleged

Finally, Imperial moves for dismissal of Sun Life's claim for RICO conspiracy. Imperial's argument rests on two grounds:  (1) because Sun Life's substantive RICO claim must fail, its RICO conspiracy claim must also fail; and (2) Sun Life has not adequately pled the existence of a conspiracy.  Neither argument has merit.

If Sun Life is required to prove that Imperial violated the RICO statute in order to hold Imperial liable for RICO conspiracy under Section 1962(d),[7] it has done so, as discussed *supra* in Section III.F.  Imperial's argument that Sun Life has only made conclusory allegations of a conspiracy merely rehashes previous arguments regarding Sun Life's claim for conspiracy to commit fraud, which are addressed *supra* in Section III.D.  Imperial's arguments are no more availing in this instance.

### CONCLUSION

For the reasons stated above, Imperial's motion to dismiss should be denied. Alternatively, to the extent the Court finds Sun Life's second amended complaint deficient, Sun

---

[7] Indeed, this argument is not supported by either a plain reading of the statute or the applicable case law.  All that is required is that the conspirator "intend to further an endeavor which, if completed, would satisfy all of the elements of a substantive criminal offense," and the conspirator "may do so in any number of ways short of agreeing to undertake all of the acts necessary for the crime's completion."  *Salinas v. United States*, 522 U.S. 52, 65 (1997).  In fact, it is "undoubtedly correct" that "a party may be liable for RICO conspiracy even if it is not liable for the substantive RICO offense."  *Jackson v. BellSouth Telecommunications*, 372 F.3d 1250, 1269 (11th Cir. 2004).

Life requests leave to file a third amended complaint to cure any deficiencies.

Dated:  October 10, 2014

PETT FURMAN, PL
Attorneys for Plaintiff
2101 N.W. Corporate Blvd., Suite 316
Boca Raton, FL 33431
(561) 994-4311
(561) 982-8985 (fax)

By: __s/Wendy L. Furman
      Wendy L. Furman
      Fla. Bar No. 0085146
      wfurman@pettfurman.com

*Of Counsel*
Stephen C. Baker (*Pro Hac Vice*)
Jason P. Gosselin (*Pro Hac Vice*)
Thomas S. Downie (*Pro Hac Vice*)
John Bloor (*Pro Hac Vice*)
Nolan B. Tully (*Pro Hac Vice*)
**DRINKER BIDDLE & REATH LLP**
One Logan Square, Ste. 2000
Philadelphia, PA 19103-6996
(215) 988-2700
Stephen.Baker@dbr.com
Jason.Gosselin@dbr.com
Thomas.Downie@dbr.com
John.Bloor@dbr.com
nolan.tully@dbr.com

### CERTIFICATE OF SERVICE

I certify that on October 10, 2014, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

George E. Schultz, Jr., Esq.
Jesus E. Cuza, Esq.
J. Raul Cosio, Esq.
Holland & Knight LLP
701 Brickell Ave.
Suite 3000
Miami, FL 33131
buddy.schulz@hklaw.com
jesus.cuza@hklaw.com
raul.cosio@hklaw.com

Philip E. Rothschild, Esq.
Frank Morreale, Esq.
Holland & Knight LLP
515 E. Las Olas Blvd.
Suite 1200
Ft. Lauderdale, FL 33301
Phil.rothschild@hklaw.com
Frank.morreale@hklaw.com

*Counsel for Defendants*

s/Wendy L. Furman
Wendy L. Furman